UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>vs.<br><br>MATTHEW WAYNE HENRY,<br><br>        Defendant. | 3:10-cr-115-HRH-JDR<br><br>**RECOMMENDATION<br>REGARDING<br>MOTION TO DISMISS<br>COUNTS 1 AND 2**<br><br>(Docket No. 23) |

Defendant **Matthew Wayne Henry** moves to dismiss Counts 1 and 2 of the Indictment on Constitutional grounds at Docket 23. The government filed an opposition at Docket 31. The government filed a supplement to their opposition to dismiss Counts 1 and 2 of the Indictment at Docket 32. Defendant filed a reply at Docket 34 and requested oral argument. The request has been denied as the motion presents questions of law only. Henry argues that prosecution under 18 U.S.C. § 922(o) is an invalid exercise of Congress's commerce power and a violation of his Second Amendment Right to keep and bear arms as that law is applied to his

case. For reasons stated below the magistrate judge RECOMMENDS THAT THE MOTION TO DISMISS BE GRANTED. Although the Second Amendment does not explicitly confer an individual right to possess a machine gun, 18 U.S.C. § 922(o)(1) as codified exceeds Congress's authority under the Commerce Clause.

## I. Background

Counts 1 and 2 of the Indictment charge illegal possession of machine guns in violation of 18 U.S.C. §§ 922(o)(1) and 924(a)(2). Count 1 alleges that on or about October 30, 2009, Henry did knowingly and unlawfully possess a machine gun DSA, Model SA58, .308 caliber fully automatic rifle, in violation of said provisions. Count 2 alleges that on or about June 14, 2010, Henry did knowingly and unlawfully possess a part designed and intended solely and exclusively for use in converting a weapon into a machine gun, to wit: an auto-sear, (no marked serial number). The Indictment also contains a criminal forfeiture allegation seeking to have declared forfeit to the United States all firearms and ammunition involved in or used in the violations alleged in Counts 1 and 2 including the fully automatic rifle and auto-sear part.

The machine gun and auto-sear part were seized from Henry's home by law enforcement officers prior to the return of the Indictment. For purposes of this motion it is undisputed that Henry is not a felon or mentally ill nor did he possess these items in a school or government building or any public location outside of his

home. It is also undisputed that Henry was not involved in the commercial sale of arms in the factual scenario.

Henry submits that he possessed these items in defense of his home, claiming this is his right under the Second Amendment. His motion relies principally upon the Supreme Court's decision in *District of Columbia v. Heller*, which held that the Second Amendment confers upon an individual the right to keep and bear arms.[1] He argues that since none of the exceptions noted in *Heller* apply to the facts of this case, his possession of the firearm and auto-sear is protected by the Second Amendment. He argues that legislating 18 U.S.C. § 922(o) was an invalid exercise of Congress's power under the Commerce Clause.

## II. Discussion

### A. Application of Second Amendment

"An Indictment sought under a statute that is unconstitutional on its face or as applied" will be dismissed.[2] In *Heller*, the U.S. Supreme Court held that the Second Amendment to the Constitution of the United States protects an individual right to possess a firearm, irrespective of service in the militia, and to use that firearm for traditional purposes such as self-defense within the home.[3] The Supreme

---

[1] 554 U.S. 570 (2008).

[2] *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007).

[3] *See Heller*, *supra* note 1.

Court affirmed the decision of the Court of Appeals for the District of Columbia in *Parker v. District of Columbia*, wherein the Court of Appeals declared three provisions of the District's Firearms Control Regulation Act to be unconstitutional.[4]

The Second Amendment to the U.S. Constitution states in relevant part: "A well regulated militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *Heller* analyzes the text of the Second Amendment focusing first on the operative clause of the Amendment ("the right of the people to keep and bear Arms shall not be infringed"), concluding that the textual content of the clause and the historical background of the amendment guarantee the individual right to possess and carry weapons in case of confrontation.[5] With regard to the Prefatory Clause ("A well regulated Militia, being necessary to the security of a free State,"), the Court held that the term "militia" refers to all able-bodied men, as opposed to State and Congressionally-regulation military forces described in the Militia Clauses of the Constitution.

The Supreme Court in *Heller* discussed its recent prior decisions regarding the Second Amendment, first considering its ruling in *United States v.*

---

[4] 478 F.3d 370 (C.A.D.C. 2007); D.C. Code § 7-2502.02, which generally barred the registration of hand guns; § 22-4504, which prohibited carrying a pistol without a license, to extent the provision would prevent a registrant from moving a gun from one room to another within his or her home; and § 7-2507.02, which required that all lawfully owned firearms be kept unloaded and disassembled or bound by a trigger lock or similar device.

[5] *Heller* at 576.

10-cr-115-HRH-JDR HENRY @23 RR Re MOTION to Dismiss_mtd.wpd                   4

Case 3:10-cr-00115-HRH   Document 35   Filed 02/15/11   Page 4 of 18

*Cruikshank*, which held that the Second Amendment does not by its own force apply to anyone other than the federal government.[6] The Court stated that the decision in *Cruikshank* did not involve a claim that the victims had been deprived of their right to carry arms in a militia and stressed that its decision in *Cruikshank* described the right protected by the Second Amendment as a "bearing [of] arms for a lawful purposes," that must be guarded by a state's police power.[7]

*Heller* also discussed *United States v. Miller*, a decision which sustained the validity of a provision requiring registration under the National Firearms Act of sawed-off shotguns in relation to the Second Amendment.[8] *Heller* states that the decision in *Miller* was predicated on the determination that "the type of weapon at issue was not eligible for Second Amendment protection."[9] The Court further concluded that *Miller* stands "only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons."[10]

---

[6] 92 U.S. 542, 553 (1876).

[7] *Id.* at 552.

[8] 307 U.S. 174 (1939).

[9] *Heller* at 622.

[10] *Id.*

The *Heller* Court stressed that "[l]ike most rights, the right secured by the Second Amendment is not unlimited."[11]  *Heller* indicates that federal firearms laws are constructionally tenable with the following statement:

> nothing in our opinion should be taken to cast doubt on long standing prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or law imposing conditions and qualifications on the commercial sale of arms.[12]

In a footnote the Court explained that they identified these presumptively lawful regulatory measures only as examples, and that the list did not purport to be exhaustive.[13]

The *Heller* Court further stated:

> We also recognized another important limitation on the right to keep and carry arms. Miller, said, as we have explained, that the sorts of weapons protected were those "in common use at the time." 307 U.S. at 179. We think that limitation is fairly supported by the historical tradition of prohibiting of the carrying of "dangerous and unusual weapons.[14]

The Court's opinion concludes that the Second Amendment is consistent with laws banning "dangerous and unusual weapons" not in common use at the time, such as

---

[11]*Id.* at 626.

[12]*Id.* at 627

[13]*Id.* at n. 26.

[14]*Id.* at 627 (citations omitted).

10-cr-115-HRH-JDR HENRY @23 RR Re MOTION to Dismiss_mtd.wpd

6

Case 3:10-cr-00115-HRH   Document 35   Filed 02/15/11   Page 6 of 18

M-16 rifles and other firearms that are most useful in military service.[15]  "[A]s we have said, the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sort of lawful weapons that they possessed at home to militia duty."[16]  The Court thus declared that the inherent right of self-defense is central to the Second Amendment right.

In the instant case, Henry recognizes that the right to keep and bear arms under *Heller* is subject to certain limitations.  His memorandum refers to the language in *Heller* describing the individual right conferred by the Second Amendment as the right of "law abiding, responsible citizens to use arms in defense of hearth and home."[17]  Although *Heller* provides guidance to this court in addressing the instant motion to dismiss, *Heller* was not a case involving an automatic or semi-automatic weapon.  The Supreme Court has never construed the Second Amendment to protect "the carrying of 'dangerous and unusual weapons.'"[18]

Section 922(o) of Title 18 of the U.S. Code makes it unlawful for any person

---

[15]*Id.*

[16]*Id.*

[17]Docket 24, *Memorandum of Law In Support of Motion to Dismiss Counts 1 and 2 of the Indictment*, p. 3.

[18]*Heller* at 627 (citations omitted).

10-cr-115-HRH-JDR HENRY @23 RR Re MOTION to Dismiss_mtd.wpd                                      7

Case 3:10-cr-00115-HRH   Document 35   Filed 02/15/11   Page 7 of 18

> to transfer or possess a machine gun, except a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or any lawful transfer of lawful possession of a machine gun that was lawfully possessed before May 19, 1986.

Section 922(o) further provides that no application to make, transfer or import a machine gun will be approved except as provided within the section. The term "machine gun" is defined in 26 U.S.C. § 5845 to mean

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more that one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine gun, and any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person.

Section 922(o) became effective May 19, 1986. On that date the government ceased accepting registrations for machine guns thus "removing the 'Constitutional legitimacy of registration as an aide to tax collection.'"[19] Unquestionably, § 922(o) prohibits the private possession of machine guns not

---

[19] *U.S. v. Aiken*, 787 F.Supp. 106, 108 (D.Md. 1992).

lawfully possessed prior to May 19, 1986.[20] Henry does not claim to fall within either of the two specified exceptions in § 922(o) to possess a machine gun.

For purposes of the motion to dismiss, defendant Henry does not dispute that he possessed a "machine gun" as that term is statutorily defined. He argues that 18 U.S.C. § 922(o) is unconstitutional, as applied to him, because it criminalizes mere possession of a firearm he allegedly possessed in defense of his home. In cases subsequent to *Heller*, claims that possession of the type of machine guns outlawed by § 922(o) should be protected under the Second Amendment when possessed or used by law abiding citizens for self defense have been made and rejected.[21]

The Supreme Court in *Heller* did not specifically find that possession of machine guns is protected by the Second Amendment. The Second Amendment does not confer a right to keep and carry any weapon in any manner for whatever

---

[20] *See Farmer v. Higgins*, 907 F.2d 1041 (11th Cir. 1990), *r'hg* and *r'gh en banc denied*.

[21] *See United States v. Gilbert*, 286 F. Apx. 383 (9th Cir. 2008) ("under *Heller*, individuals still do not have the right to possess machine guns . . . ."), *cert. denied, Gilbert v. United States*, 129 S. Ct. 613 (2008); *United States v. Fincher*, 538 F.3d 868 (8th Cir. 2008) (under *Heller*, the possession of a machine gun and unregistered saw-off shot gun is not protected by the Second Amendment) *cert. denied, Fincher v. United States,* 129 S. Ct. 1369 (2009); *United States v. Ross*, 323 F.Appx. 117 (3rd Cir. 2009)("nothing in *Heller* supports [defendant's] challenge to the constitutionality of a statute criminalizing the possession of a machine gun."), *cert. denied, Ross v. United States*, 130 S. Ct. 347 (2009); *United States v. Willaman*, No. 04-28, 2009 WL 578556 (W.D. Pa. 2009).

purpose. The Second Amendment protects a personal right to keep and bear arms "for lawful purposes."[22] Henry's claim is not within the core right identified in *Heller* namely the right of a law abiding, responsible citizen to possess and carry a weapon for self-defense.

        B.     Claim Under Commerce Clause

Our government is one of enumerated powers. "The powers delegated by the [] Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite."[23] The Constitution delegates to Congress the power to regulate Commerce in Article I, Section 8, clause 3, the Commerce Clause. Congress was delegated the power "[t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes."[24]

The most recent Ninth Circuit opinion regarding machine guns and the Commerce Clause is *United States v. Stewart*.[25] The Defendant, Mr. Stewart, was charged with, among other things, unlawful possession of a machine gun in violation

---

[22] *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3044 (2010) (plurality opinion).

[23] *United States v. Lopez*, 514 U.S. 549, 552 (1995) (quoting James Madison, THE FEDERALIST NO. 45, pp. 292-93 (C. Rossiter ed. 1961)).

[24] U.S. Const., Art. I, § 8, cl. 3.

[25] 451 F.3d 1071 (9th Cir. 2006) (hereinafter *Stewart II*).

10-cr-115-HRH-JDR HENRY @23 RR Re MOTION to Dismiss_mtd.wpd    10

Case 3:10-cr-00115-HRH   Document 35   Filed 02/15/11   Page 10 of 18

of 18 U.S.C. § 922(o). The machine guns were machined and assembled by Stewart. Stewart appealed his conviction arguing that § 922(o) is an "invalid exercise of Congress's commerce power and violates the Second Amendment . . . ."[26] In *United States v. Stewart*, the Ninth Circuit held that "as applied to Stewart, section 922(o) was an invalid exercise of Congress's commerce power."[27] The Supreme Court disagreed and remanded *Stewart I* for "further consideration" after their decision in *Gonzales v. Raich*.[28]

On remand, the Ninth Circuit continued to acknowledge that "there is nothing inherently economic or commercial about mere possession of an object . . . ."[29] It went on to analyze the act of possessing a machine gun in light of the three categories of economic activity which are encompassed in Congress's commerce power: (1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce" and (3) "those activities having a substantial effect on interstate commerce."[30] *Stewart I* analyzed possession of a machine gun under

---

[26] *Id.* at 1073.

[27] *Id.* (citing *United States v. Stewart*, 348 F.3d 1132, 1140 (9th Cir. 2003) (hereinafter *Stewart I*)).

[28] *United States v. Stewart*, 348 F.3d 1132 (2005), vacated, 545 U.S. 1112 (2005) (citing *Gonzales*, 545 U.S. 1 (2005)).

[29] *Stewart II* at 1073.

[30] *Id.* (quoting *Lopez*, 514 U.S. at 558-59 (1995)).

prong three, "whether Stewart's possession of a homemade machine gun substantially affected interstate commerce."[31]

> In *Stewart I*, the Court determined:
>
> 'Stewart's homemade machine guns did not stimulate a demand for anything illegal-all the components he bought were legally available from commercial sources.' *Stewart I* at 1138. And his possession did not affect overall demand because there is no evidence that 'Stewart would ever have bought a machine gun from a commercial source, had he been precluded by law from building one himself.' *Id*. We then noted that section 922(a) contains no 'jurisdictional element anchoring the prohibited activity to interstate commerce.' *Id*. And finally, we noted that 'Congress also failed to make any legislative findings when it enacted the statute' that might have explained and justified Congress's policy choices. *Id*. We held that legislative findings supporting prior firearms legislation were not instructive in our evaluation of section 922(o) because the section represented a sharp break from prior legislation in the field. *Id*. at 1139. Whereas earlier statutes criminalized transactions, sales or deliveries of firearms-quintessential economic activities-section 922(o) criminalizes mere possession. Because, as applied to Stewart, section 922(o) failed all four prongs of the [] test [outlined in *United States v. Morrison*],[32] we held it was unconstitutional.[33]

---

[31] *Stewart II* at 1073.

[32] 529 U.S. 598 (2000).

[33] *Stewart II* at 1074 (quoting *Stewart I* at 1138, 1139).

Following the Court's decision in *Stewart I*, the Supreme Court decided *Gonzales v. Raich*.[34] *Raich* examined whether regulation of possession of medical marijuana under the Controlled Substances Act (CSA), was authorized by the Commerce Clause. The Court in *Stewart II* anagolized *Raich* with Stewart's claims and determined that under the *Raich* analysis, § 922(o)'s criminalization of possession of a machine gun was authorized under the Commerce Clause. *Stewart II* acknowledges that the activities regulated in *Raich* and with regards to Mr. Stewart are recognized as entirely non-economic under the previously used economic analysis in *Morrison*,[35] that neither law contains a jurisdictional element which limits its reach, and neither express congressional findings regarding how the activity affects interstate commerce.[36]

The Supreme Court vacated the judgment in *Stewart I* and remanded the case to the Ninth Circuit in light of *Raich*.[37] On remand, the Ninth Circuit

---

[34] 125 S. Ct. 2195 (2005).

[35] *Stewart II* at 1074 (citing *Morrison*, 529 U.S. at 610-12 ("(1) whether the regulated activity is commercial or economic in nature; (2) whether an express jurisdictional element is provided in the statute to limit its reach; (3) whether Congress made express findings about the effects of the proscribed activity on interstate commerce; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated.")).

[36] *Stewart II* at 1074.

[37] *United States v. Stewart,* 545 U.S. 1112 (2005).

determined that the possession of machine guns, as contemplated in § 922(o), did substantially affect interstate commerce.[38]

The Defendant asks this court to determine that in light of the Supreme Court's more recent decision in *Heller*, § 922(o) can no longer be considered a proper exercise of Congress's Commerce Clause power. He urges that in *Stewart II*, the Ninth Circuit would have decided the case differently had *Heller* been precedent. Specifically, he argues that § 922(o) is no longer a proper exercise of the Commerce Clause power now that the Supreme Court has determined that there is an individual right to bear arms under the Second Amendment.[39] This argument is based largely on a footnote in *Stewart II* wherein the Court stated:

> We note in passing that since the Second Amendment does not grant individual rights, *see Silveria v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002), we cannot rely on it as a basis for requiring Congress to make specific findings in legislation touching on firearms.[40]

In *Raich*, the Supreme Court observed that courts do not need to scrutinize Congress's conclusions closely stating: "[w]e need not determine whether [Raich's] activities, taken in the aggregate, substantially affect interstate commerce in fact, but

---

[38] *See generally Stewart II*.

[39] *See generally Heller*, *supra* note 1.

[40] *Stewart II*, n.6, 1075.

10-cr-115-HRH-JDR HENRY @23 RR Re MOTION to Dismiss_mtd.wpd                    14

Case 3:10-cr-00115-HRH   Document 35   Filed 02/15/11   Page 14 of 18

only whether a 'rational basis' exists for so concluding."[41] And, the Ninth Circuit also noted with respect to *Raich*'s reference to rational basis, "we read its use of the term 'rational basis' as incorporating the rational basis test that we employ in run-of-the-mill equal protection cases-those not involving fundamental rights or discrete and insular minorities."[42]

In the instant case the Defendant, Henry, argues that since the Supreme Court determined that the Second Amendment conveys a personal right to bear arms, now viewed as a fundamental right, the for review under the Commerce Clause would be a heightened scrutiny test. It would follow that the Court's interpretation of the law in *Stewart II* would be subject to revision.

Section 922(o) "represented a sharp break from prior legislation in the field."[43] "Whereas earlier statutes criminalized transactions, sales or deliveries-quintessential economic activities-section § 922(o) criminalizes mere possession."[44] A thorough review of the legislative history regarding § 922(o) shows that Congress gave no explanation regarding jurisdiction. There is no explanation or even an attempt to

---

[41] *Id.* at 1075 (quoting *Raich* at 2208).

[42] *Stewart II*, n.7, 1076.

[43] *Stewart I* at 1139.

[44] *Stewart II* at 1074

explain how the mere possession of a homemade machine gun affects interstate commerce.[45]

Previous cases regarding § 922(o) have analyzed the statute's affect on interstate commerce under the rational basis test.[46] That is, whether there is a rational basis to believe that possession of a machine gun has an affect on interstate commerce. While the Supreme Court did not outline a particular test regarding the Second Amendment right to bear arms in *Heller*, it did say that the test should be more than a rational basis inquiry.[47]

The Government, it its Oppositions at Dockets 31 and 33, does nothing more than present conclusory statements to support their position that § 922(o) is authorized under the Commerce Clause in light of *Heller*:

> As discussed in the United States' opposition to the defense motion, the *Heller* decision and its Second Amendment implications do not support the defense motion in this case. Further, the *Heller* decision has no impact on the Supreme Court's decision in *Reich*, as it has no direct Commerce Clause application. A combined review of the "Stewart 1" and *Heller* decisions fails to

---

[45] *See* H.R. REP. NO. 99-945 (1986); 145 CONG. REC. 6835 et. seq. (1986); 132 CONG. REC. 7075 et. seq. (1986); 132 CONG. REC. 9586 et. seq. (1986); 131 CONG. REC. 16976 (1985).

[46] *Stewart II* at 1075 (citing *Raich* at 2208 ("We need not determine whether [Raich's] activities, taken in the aggregate, substantially affect interstate commerce in fact, but only whether a 'rational basis' exists for so concluding.")

[47] *See Heller* at 634-35.

10-cr-115-HRH-JDR HENRY @23 RR Re MOTION to Dismiss_mtd.wpd        16

Case 3:10-cr-00115-HRH   Document 35   Filed 02/15/11   Page 16 of 18

provide legal authority for the dismissal of the indictment in this case.[48]

Henry notes briefly in his *Reply* at Docket 34 that this court should consider the Alaska Firearms Freedom Act, A.S. § 44.99.500, in support of his motion. However, the Defendant does not provide any law instructing the court on how to consider or what weight to give state law. In federal matters, federal law trumps state law. Without more explanation from the Defendant, the court is unable give weight to the Alaska Firearms Freedom Act.

### III. Conclusion

While nothing in *Heller* specifically supports Henry's constitutional challenge under the Second Amendment attacking the statute criminalizing the possession of machine guns, the magistrate judge recommends that the court find that § 922(o) violates the Commerce Clause in light of the individual right to bear arms identified in *Heller* considering the current state of the law and sparse legislative history. The magistrate judge notes that Congress may not be entirely precluded from regulation in this area, but the current law and legislative history are inadequate.

//

---

[48] Docket 33, *Supplement to Opposition to Motion to Dismiss Counts 1 and 2 of the Indictment*, p. 3.

Accordingly, the defendant's Motion to Dismiss at Docket 23 should be GRANTED. IT IS SO RECOMMENDED.

DATED this 14th day of February, 2011, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

In light of the trial date and Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **4:00 PM on Friday, February 18, 2010**. The failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **NOON Tuesday, February 22, 2011**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).