IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

```
UNITED STATES OF AMERICA,       )
                                )
                     Plaintiff, )
                                )
     vs.                        )
                                )
MATTHEW WAYNE HENRY,            )
                                )    No. 3:10-cr-0115-HRH
                     Defendant. )
_____)
```

O R D E R

Motion to Dismiss

Defendant moves to dismiss Counts 1 and 2 of the indictment in this case.[1] The motion is opposed.[2] By a reply memorandum, defendant sought an evidentiary hearing.[3]

The motion was referred to a magistrate judge who declined to entertain oral argument because only legal questions were raised. No evidentiary hearing was conducted because, with one possible exception, there were no disputed facts. Defendant requested an evidentiary hearing for purposes of establishing "the facts of this

---

[1]Docket No. 23.

[2]Docket Nos. 31 & 33.

[3]Defendant's Reply to Government's Opposition (Docket No. 33) to Defendant's Motion to Dismiss Counts 1 and 2 of the Indictment at 4, Docket No. 34.

- 1 -

case as to the homemade nature of the arms involved...."[4] No evidentiary hearing was necessary because the magistrate judge assumed, as does this court, that the machinegun which is the subject of Count 1 of the indictment was homemade.[5]

The magistrate judge served and filed an initial report and recommendation.[6] Provision was made for the filing of objections. The government filed objections[7] to which defendant replied.[8] The magistrate judge has now entered a final report and recommendation,[9] rejecting the government's objections and confirming the original recommendation that the motion to dismiss Counts 1 and 2 be granted.

Count 1 of the indictment charges the defendant with possession of a machinegun in violation of 18 U.S.C. § 922(o)(1).[10] That statute makes it "unlawful for any person to ... possess a machinegun." Count 2 of the indictment charges defendant with possession of a part designed and intended solely and exclusively

---

[4]Id.

[5]The court also assumes that the firearm in question may at one time have traveled in interstate commerce; but the assumption for purposes of this order is that the weapon was converted to be a fully automatic weapon in the District of Alaska.

[6]Docket No. 35.

[7]Docket No. 42.

[8]Docket No. 43.

[9]Docket No. 44.

[10]Indictment at 1-2, Docket No. 2.

for use in converting a weapon into a machinegun.[11]  The parties do not differentiate between these two counts in their briefing of the motion to dismiss.

The facts relevant to defendant's motion to dismiss are as follows:

The machinegun and the auto-sear part were found in defendant's home.  It is not disputed that the weapon in question was a machinegun, nor that the auto-sear had no legitimate purpose other than the conversion of a conventional weapon to a machinegun.  For purposes of the instant motion, it is undisputed that defendant is not a felon, not mentally ill, and did not possess the machinegun in a prohibited location such as a school, government building, or

---

[11]Id. at 2.  Title 18, § 921(a)(23), United States Code, defines the term "machinegun" by reference to § 5845(b) of the National Firearms Act, 26 U.S.C. § 5845(b).  Section 5845(b) defines the term "machinegun" as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.

26 U.S.C. § 5845(b).  The term machinegun also includes:

> any part designed and intended solely and exclusively ... for use in converting a weapon into a machinegun....

Id.

A machinegun was first patented in 1862 and came into use by the United States military authorities thereafter.  See 8 World Book Encyclopedia, 68 (2003 ed.).  The first more or less modern style of machinegun (having a single barrel rather than multiple barrels as was the case with the Gatling gun) was invented in 1884.  See 7 New Encyclopedia Britannica, 631 (2003 ed.).  The Maxim machinegun was used in the First World War and by military authorities all over the world thereafter.  Id.

any other public location.  It is undisputed for purposes of the instant motion that defendant was not involved in any commercial sale of the machinegun.  As stated above, the court assumes that the weapon in question was converted into a machinegun in the District of Alaska.

Defendant contends that he has a Second Amendment right to possess the machinegun in his home for purposes of self-defense.  Defendant also contends that 18 U.S.C. § 922(o) is an invalid exercise of Congress' constitutional authority with respect to commerce.

The magistrate judge concluded:

> The Second Amendment protects a personal right to keep and bear arms "for lawful purposes." Henry's claim is not within the core right identified in Heller[12] namely the right of a law abiding, responsible citizen to possess and carry a weapon for self-defense.[13]

Thus the magistrate judge has in substance rejected defendant's Second Amendment claim.  In that regard, a preliminary observation is necessary.  Presumably, the lawful purposes to which the magistrate judge refers has to do with the defense of one's home.  While that is certainly an important concept for purposes of the Second Amendment, it is not the focus of Heller.  The focus of Heller, as discussed below, is on the type of weapon which is protected by the Second Amendment.  With that focus in mind, it was proper to recommend that defendant's Second Amendment claim is not within the

---

[12]District of Columbia v. Heller, 554 U.S. 570 (2008).

[13]Initial Report and Recommendation at 10, Docket No. 35 (citation omitted).

- 4 -

core right to bear arms that is identified in Heller; but that recommendation misconstrues the scope or extent of the Second Amendment right of the people.

The individual right to bear arms identified in Heller was, first and foremost, a right to possess a handgun. Beyond this, and largely for purposes of addressing concerns of Justice Stevens (who dissented from Heller), the majority decision by Justice Scalia goes to considerable pains to explain the Supreme Court's earlier Second Amendment decision in United States v. Miller, 307 U. S. 174 (1939). Justice Scalia emphasizes that Miller had to do with the type of weapon at issue. Heller, 554 U.S. at 622. In Miller, the Supreme Court had concluded that a short-barreled (sawed-off) shotgun was not protected by the Second Amendment because there was no showing that it was reasonably needed to maintain an efficient militia nor was it apparent that such a weapon was a part of "'ordinary military equipment or that its use could contribute to the common defense.'" Id. (quoting Miller, 307 U.S. at 178). Justice Scalia's further discussion of Miller is highly instructive for purposes of this case.

> We may as well consider at this point (for we will have to consider eventually) what types of weapons Miller permits. Read in isolation, Miller's phrase "part of ordinary military equipment" could mean that only those weapons useful in warfare are protected. That would be a startling reading of the opinion, since it would mean that the National Firearms Act's restrictions on machineguns (not challenged in Miller) might be unconstitutional, machineguns being useful in warfare in

- 5 -

> 1939.[14]  We think that <u>Miller</u>'s "ordinary
> military equipment" language must be read in
> tandem with what comes after: "[O]rdinarily
> when called for [militia] service [able-
> bodied] men were expected to appear bearing
> arms supplied by themselves and of the kind in
> common use at the time."  307 U. S., at 179.
> The traditional militia was formed from a pool
> of men bringing arms "in common use at the
> time" for lawful purposes like self-defense.
> "In the colonial and revolutionary war era,
> [small-arms] weapons used by militiamen and
> weapons used in defense of person and home
> were one and the same."  <u>State v. Kessler</u>,
> 289 Ore. 359, 368, 614 P.2d 94, 98 (1980)
> (citing G. Neumann, Swords and Blades of the
> American Revolution 6-15, 252-254 (1973)).
> Indeed, that is precisely the way in which the
> Second Amendment's operative clause furthers
> the purpose announced in its preface.  We
> therefore read <u>Miller</u> to say only that the
> Second Amendment does not protect those
> weapons not typically possessed by law-abiding
> citizens for lawful purposes, such as short-
> barreled shotguns.  That accords with the
> historical understanding of the scope of the
> right, see Part III, <u>infra</u>.

<u>Heller</u>, 554 U.S. at 624-25 (footnote omitted).

In part III of <u>Heller</u>, after observing that Second Amendment rights, like others, are not unlimited and after a brief exposition of Nineteenth Century authorities, Justice Scalia writes for the majority:

> Although we do not undertake an exhaustive
> historical analysis today of the full scope of
> the Second Amendment, nothing in our opinion
> should be taken to cast doubt on longstanding
> prohibitions on the possession of firearms by
> felons and the mentally ill, or laws
> forbidding the carrying of firearms in sensi-
> tive places such as schools and government

---

[14]As set out in footnote 10, machineguns were used in warfare by the 1860s, but not before that and certainly not at the time of the adoption of the Second Amendment to the Constitution.

> buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 626-27 (footnote omitted). Amplifying the foregoing still further, the majority opinion continues:

> We also recognize another important limitation on the right to keep and carry arms. Miller said, as we have explained, that the sorts of weapons protected were those "in common use at the time." 307 U. S., at 179. We think that limitation is fairly supported by the historical tradition of prohibiting the carrying of "dangerous and unusual weapons." See 4 Blackstone 148-149 (1769)[.]

Id. at 627 (additional authorities omitted).

Although the foregoing discussion by the majority in Heller goes well beyond the actual circumstances of Heller, it is entirely clear to this court that the United States Supreme Court is not about to include machineguns amongst those weapons that may be possessed in the home for self-defense by persons such as the defendant here. Surely no one would think that the more liberal minority on the United States Supreme Court would fail to join with the conservative majority were the Supreme Court to be asked to consider whether or not Second Amendment protection should be extended to machineguns. The court concludes that, even in one's residence, possession of homemade machineguns or parts possessed for purposes of converting a conventional weapon to a machinegun are not protected by the Second Amendment.

Turning attention to defendant's Commerce Clause argument, the magistrate judge recommended to the court that it "find that § 922(o) violates the Commerce Clause in light of the individual

right to bear arms identified in Heller...."[15] That recommendation requires analysis of Ninth Circuit Court authority predating Heller, which held § 922(o) to be within Congress' commerce power.

In United States v. Stewart, 348 F.3d 1132 (9th Cir. 2003), the Ninth Circuit Court of Appeals held § 922(o) to be an invalid exercise of Congress' commerce power. The Supreme Court granted certiorari and vacated the Stewart decision, calling upon the Ninth Circuit Court to reexamine its decision in light of Gonzales v. Raich, 545 U.S. 1 (2005). See United States v. Stewart, 545 U.S. 1112 (2005). Upon examining Raich, the Ninth Circuit Court reversed its position, holding "that Congress had a rational basis for concluding that in the aggregate, possession of homemade machineguns could substantially affect interstate commerce in machineguns." United States v. Stewart, 451 F.3d 1071, 1078 (9th Cir. 2006) ("Stewart II"). The Ninth Circuit Court saw no need to inquire into the specifics of the defendant's possession, quoting Raich, 545 U.S. at 17: "'[w]hen a general regulatory statute bears a substantial relation to commerce, the de minimus character of individual instances arising under that statute is of no consequence.'" Id.

The magistrate judge's recommendation that § 922(o) violates the Commerce Clause is founded upon the conclusion that heightened scrutiny, not the rational basis test of constitutionality, must be applied in light of Heller. The report observes that, "[w]hile the Supreme Court did not outline a particular test regarding the

---

[15]Initial Report and Recommendation at 17, Docket No. 35.

Second Amendment right to bear arms in Heller, it did say that the test should be more than a rational basis inquiry."[16]  The court does not read Heller in that fashion.

First, Heller was not a case in which the Supreme Court was wrestling with limitations upon a recognized constitutional right. Rather, Heller announces a Second Amendment right that had not been recognized previously.  Heller does not address the question of what level of scrutiny would be applied in a case questioning the power of Congress to restrict a constitutional right.  In responding to Justice Breyer, Justice Scalia observes that the former justice, "criticizes us for declining to establish a level of scrutiny for evaluating Second Amendment restrictions." Heller, 554 U.S. at 634.  The majority thus rejects Justice Breyer's interest-balancing inquiry for purposes of Second Amendment jurisprudence.  Justice Scalia further observes: "[w]e know of no other enumerated constitutional right whose core protection has been subjected to a free-standing 'interest balancing' approach."  Id.

What Heller teaches us is that there is an individual Second Amendment right to possess arms of the kind in common use at the time of the adoption of the Second Amendment.  The right excludes dangerous and unusual weapons.  As discussed above, Heller excludes machineguns.  They were not in common use at the time the Second Amendment was adopted.  Machineguns may not be unusual today (in the hands of the military), but they certainly are dangerous. While the Supreme Court will surely have to return to the subject

---

[16]Id. at 16 (footnote omitted).

of how future gun cases will be evaluated, as to machineguns <u>Heller</u> does not dictate a mode of constitutional analysis different from that undertaken by the Ninth Circuit Court in <u>Stewart II</u>.

Second, defendant's Commerce Clause argument, and the report and recommendation to this court, are founded upon the contention that individuals have a Second Amendment right to possess any kind of weapon in their residence. That is not what <u>Heller</u> holds. <u>Heller</u> does not create an absolute right to possess any type of firearm — indeed it expressly (albeit <u>dicta</u> given the facts of <u>Heller</u>) negates any notion that there is a Second Amendment right to possess a machinegun. <u>Heller</u>, 554 U.S. at 627. Because there is no Second Amendment right to possess a machinegun, <u>Stewart II</u> and the level of scrutiny which it employed remain the law of the circuit.

The defendant seeks to avoid the holding of <u>Stewart II</u> based upon the Ninth Circuit Court's footnote in that decision, wherein it is observed: "[w]e note in passing that since the Second Amendment does not grant individual rights, we cannot rely on it as a basis for requiring Congress to make specific findings in legislation touching on firearms." <u>Stewart II</u>, 451 F.3d at 1075, n.6 (internal citation omitted). This note is of no help to defendant. Were the Ninth Circuit Court writing <u>Stewart II</u> today, the footnote in question would read: "[w]e note in passing that since the Second Amendment does not grant individuals the right to possess a machinegun, there is no basis for requiring Congress to

make specific findings in legislation proscribing the possession of such firearms."

## Conclusion

The defendant has a Second Amendment right to possess in his residence such common firearms as conventional pistols, long rifles, and shotguns, but he does not have a constitutional right to possess a machinegun or a part designed and intended solely and exclusively for use in converting a firearm to a machinegun. Because there is no Second Amendment right to possess a homemade machinegun in one's home, the holding of Stewart II is still valid and binding upon this court. 18 U.S.C. § 922(o) is not outside Congress' authority to regulate commerce.

The motion to dismiss Counts 1 and 2 of the indictment in this case is denied.

DATED at Anchorage, Alaska, this 2nd day of March, 2011.

s/ H. Russel Holland
United States District Judge